**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ADVANCED SURGICAL CONCEPTS LIMITED and ATROPOS LIMITED,<br><br>*Plaintiffs*,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.<br><br>*Defendant.* | Case No. 1:26-cv-11010<br><br>**REQUEST FOR HEARING** |

**DEFENDANT INTUITIVE SURGICAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 2
III. LEGAL STANDARD .......... 5
IV. ARGUMENT .......... 7
A. Venue Is Not Proper in This District Under Section 1400(b) .......... 7
1. Plaintiffs Cannot Establish Proper Venue Under The "Resides" Prong .......... 7
2. Plaintiffs Cannot Establish Proper Venue Under The "Regular and Established Place of Business" Prong .......... 7
B. Because Venue Is Improper Under Section 1400(b), The Court Should Dismiss, Or At Least Transfer to The Northern District Of California .......... 19

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*4WEB, Inc. v. NuVasive, Inc.*,
2024 WL 1932416 (E.D. Tex. May 2, 2024)....................15, 16

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
6 F.4th (Fed. Cir. 2021)....................18

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013)....................19

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
2020 WL 2079422 (D. Mass. Apr. 30, 2020)....................6, 7

*C.R. Bard, Inc. v. Smiths Med. ASD, Inc.*,
2020 WL 6710425 (D. Utah Nov. 16, 2020)....................15

*Cabot Corp. v. WGM Safety Corp.*,
562 F. Supp. 891 (D. Mass. 1983)....................20

*Celgene Corp. v. Mylan Pharms. Inc.*,
17 F.4th 1111 (Fed. Cir. 2021)....................7, 12, 13

*Clark v. DocuSign, Inc.*,
2022 WL 16985185 (D.D.C. Nov. 15, 2022)....................14

*Cordis Corp. v. Cardiac Pacemakers*,
599 F.2d 1085 (1st Cir. 1979)....................6

*Correct Transmission LLC v. ADTRAN, Inc.*,
2021 WL 1967985 (W.D. Tex. May 17, 2021)....................12

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)....................5, 6, 7, 8, 9, 11, 12, 13, 14

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020)....................18

*IngenioShare, LLC v. Epic Games, Inc.*,
2022 WL 827808 (W.D. Tex. Mar. 18, 2022)....................13

*Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*,
2018 WL 4963129 (C.D. Cal. June 22, 2018)....................10

*Janssen Prods., L.P. v. EVER Valinject GmbH*,
2025 WL 639380 (N.D. Ill. Feb. 27, 2025)....................17

*Johnson Creative Arts, Inc. v. Wool Masters, Inc.*,
743 F.2d 947 (1st Cir. 1984)....................20

*McZeal v. Sprint Nextel Corp.*,
501 F.3d 1354 (Fed. Cir. 2007)....................17

*Metrom Rail, LLC v. Mass. Bay Transp. Auth.*,
2025 WL 3513894 (D. Mass. Dec. 8, 2025) ........ 6, 10, 11

*Mulcahy v. Guertler*,
416 F. Supp. 1083 (D. Mass. 1976) ........ 20

*Ocugiene, Inc. v. ThermaMEDx, LLC*,
2022 WL 18284980 (C.D. Cal. Dec. 8, 2022) ........ 16

*Pers. Audio, LLC v. Google, Inc.*,
280 F. Supp. 3d 922 (E.D. Tex. 2017) ........ 10, 12

*Regents of Univ. of Minn. v. Gilead Scis., Inc.*,
299 F. Supp. 3d 1034 (D. Minn. 2017) ........ 14

*Rosco, Inc. v. Safety Vision LLC*,
2020 WL 5603794 (S.D.N.Y. Sept. 18, 2020) ........ 15

*Schnell v. Peter Eckrich & Sons, Inc.*,
365 U.S. 260 (1961) ........ 5

*Signify Holding B.V. v. Keystone Techs., LLC*,
2024 WL 6912730 (N.D. Ga. Dec. 19, 2024) ........ 18

*Stars for Art Prod. FZ, LLC v. Dandana, LLC*,
806 F. Supp. 2d 437 (D. Mass. 2011) ........ 20

*Symbology Innovations, LLC v. Lego Sys., Inc.*,
282 F. Supp. 3d 916 (E.D. Va. 2017) ........ 9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
581 U.S. 258 (2017) ........ 6, 7

*Turnley v. Banc of Am. Inv. Servs., Inc.*,
576 F. Supp. 2d 204 (D. Mass. 2008) ........ 10

*In re Volkswagen Grp. of Am., Inc.*,
28 F.4th 1203 (Fed. Cir. 2022) ........ 5, 18

*Westech Aerosol Corp. v. 3M Co.*,
2017 WL 3387363 (W.D. Wash. Aug. 7, 2017) ........ 13

*Westech Aerosol Corp. v. 3M Co.*,
927 F.3d 1378 (Fed. Cir. 2019) ........ 6, 9, 17, 20

*Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*,
2022 WL 7376137 (E.D. Tex. Aug. 22, 2022) ........ 15, 18

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018) ........ 5, 6, 7

**Statutes**

28 U.S.C. § 1400(b) ........ 1, 2, 4, 5, 6, 7, 13, 19, 20

28 U.S.C. § 1406(a) ....................................................................................................1, 6, 19, 20

**Rules**

Fed. R. Civ. P. 12(b)(3)..........................................................................................................1, 5, 6

**Treatises**

5B Wright & Miller, Fed. Prac. & Proc. § 1352 (4th ed.) ...............................................................6

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Intuitive | Intuitive Surgical, Inc. |
| ASC | Advanced Surgical Concepts Limited |
| Atropos | Atropos Limited |
| Plaintiffs | ASC and Atropos |
| UFP | UFP Technologies, Inc. |
| SP | Single Port |
| Access Port Kits | da Vinci SP Access Port Kit and da Vinci SP Advanced Access Port Kit |
| Asserted Patents | U.S. Patent Nos. 7,998,068; 9,271,753; 10,405,883; 11,202,653; 11,771,460; 12,213,700 |
| Shaw Decl. | Declaration of Ryan Shaw in Support of Intuitive's Motion |
| Complaint | Plaintiffs Advanced Surgical Concepts Limited and Atropos Limited's Complaint for Patent Infringement, Dkt. No. 1 (filed Feb. 26, 2026) |

## TABLE OF EXHIBITS

| Exhibit | Document |
|---|---|
| 1 | Intuitive "Minimally Invasive Care \| About Us" Webpage |
| 2 | "Careers in Sunnyvale" Webpage |
| 3 | Intuitive "Single Port \| Da Vinci SP" Webpage |
| 4 | Intuitive "Da Vinci SP" Brochure |
| 5 | Intuitive "Office Locations" Webpage |
| 6 | "Intuitive Around the World" Webpage |
| 7 | Intuitive-722 Plantation Lease Termination Agreement |
| 8 | UFP Technologies, Inc. ("UFP")'s Form 8-K dated March 18, 2024 |
| 9 | UFP "About Us—Locations" Webpage |
| 10 | "UFP Technologies Acquires Dielectrics, Inc." News Release |
| 11 | UFP 2025 Annual Report |
| 12 | UFP "Welcome Investors" Presentation |
| 13 | Alpha Preclinical "Contact Us" Webpage |
| 14 | Intuitive 2025 Annual Report (excerpted) |
| 15 | Intuitive "Search" Webpage |
| 16 | SimplyHired Webpage |
| 17 | Driving Time from Manchester, NH to Boston, MA |
| 18 | Driving Time from Nashua, NH to Boston, MA |

Pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), Defendant Intuitive Surgical, Inc. ("Intuitive") moves to dismiss Plaintiffs Advanced Surgical Concepts Limited ("ASC") and Atropos Limited ("Atropos") (together, "Plaintiffs")'s Complaint (Dkt. No. 1) because venue is improper under 28 U.S.C. § 1400(b), or in the alternative, to transfer to the Northern District of California.

## I. INTRODUCTION

Venue is plainly and unambiguously improper in this District. Rather than accept what any rudimentary investigation would have revealed, Plaintiffs instead manufacture a basis to allege venue through a combination of false assertions about Intuitive and wholly irrelevant assertions about third parties. Under 28 U.S.C. § 1400(b), a claim for patent infringement may only be brought in two places: either where the defendant (1) resides, or (2) maintains a regular and established place of business and commits the alleged acts of infringement. As neither prong is satisfied here for Intuitive, there is no discretion. Venue is not proper under governing law, and so the case must be dismissed or transferred.

As to the "resides" prong, there is no dispute that Intuitive does not reside in this District. Plaintiffs acknowledge Intuitive is a Delaware corporation headquartered in Sunnyvale, California; Intuitive therefore does not reside in the District of Massachusetts for purposes of patent venue.

Plaintiffs likewise cannot satisfy the "regular and established place of business" prong. Plaintiffs attempt to establish venue by: (i) mischaracterizing a third-party address as an Intuitive facility, even though Intuitive has not occupied that space for over two years; (ii) pointing to a few remote sales employees whose homes are not places of Intuitive's business and whose residence in Massachusetts is not required by Intuitive; and (iii) facilities owned and operated by UFP Technologies, Inc. ("UFP"), an independent third-party supplier that serves multiple customers

and is not controlled by Intuitive. None of these allegations alone, or in combination, establish venue based on a "regular and established place of business" in this District. Federal Circuit law clearly establishes that venue is improper under these circumstances.

Because venue is improper under § 1400(b), the Court should dismiss the Complaint. In the alternative, if the Court concludes that transfer is preferable to dismissal the matter should be transferred to the Northern District of California, where Intuitive is headquartered. Not only does Intuitive have a regular and established place of business there, but it is also the District with the clearest ties to this matter. The products that Plaintiffs accuse of infringement in the Complaint—Intuitive's SP Access Port Kit and SP Advanced Access Port Kit—were designed, developed, and tested almost exclusively in California, and not in Massachusetts. Virtually all of the relevant evidence associated with the Access Port Kits is located in the Northern District of California, including technical and financial documents, and the physical product for inspection. Intuitive's witnesses most knowledgeable of the accused access ports are also primarily located in California.

Intuitive therefore respectfully moves to dismiss Plaintiffs' Complaint for improper venue; alternatively, Intuitive requests transfer to the Northern District of California, where this case could and should have been filed.

## II. BACKGROUND

Headquartered in Sunnyvale, California, Intuitive is a pioneer in robotic-assisted surgery whose da Vinci Surgical Systems have been used in millions of minimally invasive procedures worldwide, helping patients recover faster and with fewer complications. Dkt. No. 1 ¶ 10; Declaration of Ryan Shaw in Support of Intuitive's Motion ("Shaw Decl.") ¶¶ 3, 5; Ex. 1[1] at 1–2 (Intuitive Webpage – About Us). From its Northern California campus, Intuitive leads the design,

[1] All exhibits are attached hereto the Declaration of Hannah L. Bedard.

engineering, and clinical innovation that have made robotic-assisted surgery a standard of care in hospitals across the country. Shaw Decl. ¶¶ 2, 6–8; Ex. 2 at 1–2 (Intuitive Webpage – Careers in Sunnyvale). Among Intuitive's innovative products that are designed and developed in California, Intuitive's da Vinci Single Port ("SP") is engineered to perform robotic-assisted surgery through a single incision or natural orifice. Ex. 3 at 1, 4 (Intuitive Webpage – Single Port | Da Vinci SP); Ex. 4 at 3, 7–8 (Intuitive Brochure – Da Vinci SP). The da Vinci SP's unique patient cart design, instruments optimized for single-port surgery (*i.e.*, through a single incision), and advanced vision empowers surgeons to pioneer new surgical approaches that reduce the number of incisions for soft tissue robotic surgery and aim to improve the quality of life for patients. Ex. 3 at 1, 4–5 (Intuitive Webpage – Single Port | Da Vinci SP). Intuitive's da Vinci SP Access Port Kit and da Vinci SP Advanced Access Port Kit (collectively, the "Access Port Kits") are accessories for the da Vinci SP System that provide a single incision access point in the body wall of a patient for accessing shallow and deep anatomy. Ex. 4 at 11 (Intuitive Brochure – Da Vinci SP); Shaw Decl. ¶ 2. Aside from its California headquarters and nearby offices in Sunnyvale, Intuitive has additional offices in Georgia and a handful of other states, and more than ten offices outside the United States. Shaw Decl. ¶ 9; Ex. 5 at 1 (Intuitive Webpage – Office Locations); Ex. 6 (Intuitive Webpage – Around the World). However, it does not have an office in Massachusetts. Shaw Decl. ¶¶ 10–12.

On February 26, 2026, Plaintiffs filed their Complaint against Intuitive, alleging infringement of six patents ("the Asserted Patents") by Intuitive's Access Port Kits. Dkt. No. 1 ¶¶ 67, 81, 95, 109, 123, 136. According to Plaintiffs' Complaint, Atropos owns all rights to the Asserted Patents, and ASC is the exclusive licensee. *Id.* ¶ 62. Plaintiffs are organized under the laws of Ireland, and do not allege they have any connection with Massachusetts. *Id.* ¶¶ 7–8.

Despite having no connection to this District, Plaintiffs filed suit against Intuitive in Massachusetts. As Plaintiffs recognize, Intuitive is a Delaware corporation with its principal place of business in California. *Id.* ¶ 10. Thus, Plaintiffs rely solely on the second prong of Section 1400(b) to try to lay venue in this District. However, Plaintiffs' position depends on outdated and unsupported information about Intuitive's office locations, and on the activities of a third party—neither of which establishes venue.

The Complaint first alleges that Intuitive has a "regular and established place of business in the District of Massachusetts at 722 Plantation Street, Worcester, Massachusetts, 01605." Dkt. No. 1 ¶¶ 12, 23. Critically, Intuitive's presence at and lease of that office ended more than two and a half years before Plaintiffs filed their Complaint. Shaw Decl. ¶ 13; Ex. 7 at 1 § 2 (Lease Termination Agreement). Indeed, the current signage at the facility shows that it is occupied by another, unrelated company, as does that company's website. Shaw Decl. ¶¶ 13–14. Additionally, Plaintiffs allege that some Intuitive employees, including sales representatives, live or work in Massachusetts. Dkt. No. 1 ¶ 25. But Intuitive does not provide offices in Massachusetts for those remote employees, and their homes are not Intuitive's places of business. Intuitive does not condition employment on employees living in the District and does not require employees to store Intuitive equipment at its employees' homes. Shaw Decl. ¶¶ 15–19. Indeed, employees who service the Massachusetts area can and do live in other states. *Id.*

The Complaint further labels third-party UFP—a publicly traded corporation that is not part of Intuitive—as "Intuitive's manufacturing agent" and alleges that UFP "maintains a regular and established place of business" in Newburyport, Massachusetts and has another manufacturing facility in Chicopee, Massachusetts. Dkt. No. 1 ¶¶ 30, 32. But those facilities belong to, are maintained by, and are controlled by third-party UFP—not Intuitive. Ex. 8 at 1 (UFP 8-K) (cited

in Dkt. No. 1 ¶ 32); Ex. 9 at 2 (UFP Webpage – Locations).[2] Indeed, even in the SEC document cited by Plaintiffs in the Complaint—a document prepared and filed by third-party UFP, not Intuitive—UFP describes a subsidiary of Intuitive (Intuitive Surgical Sàrl; not the named defendant in this action) as "one of [UFP's] strategic medical customers." Ex. 8 at 2 (UFP 8-K). Other of UFP's public documents make clear that the vast majority of its sales revenues come from entities other than Intuitive. *See* Ex. 11 at 9 (UFP 2025 Annual Report); *see also* Ex. 12 at 8 (UFP 2026 Investor Presentation). Intuitive does not maintain any place of business in either Chicopee or Newburyport, or anywhere else in Massachusetts. Shaw Decl. ¶¶ 10–30.

At the Parties' meet and confer ahead of the scheduling conference, Intuitive explained these facts to Plaintiffs and asked Plaintiffs to consent to dismissal or transfer to the Northern District of California. Plaintiffs refused and insisted their allegations are sufficient. Intuitive therefore brings this motion.

## III. LEGAL STANDARD

Venue for patent infringement cases is governed by 28 U.S.C. § 1400(b). Under Rule 12(b)(3), a party may move to dismiss a civil action based on improper venue. "Whether venue is proper under § 1400(b) is an issue unique to patent law and is governed by Federal Circuit law." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018). Both the Supreme Court and the Federal Circuit have cautioned that the requirement for venue "is specific and unambiguous," and "is not one of those vague principles which . . . is to be given a liberal construction." *In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017) (quoting *Schnell v. Peter Eckrich & Sons, Inc.,* 365 U.S. 260, 264 (1961)); *see also In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1208 (Fed. Cir.

---

[2] UFP acquired this facility in 2018 when it acquired another medical device manufacturer, Dielectrics, Inc. Ex. 10 (UFP News Release — UFP Technologies Acquires Dielectrics, Inc.).

2022) (acknowledging again that the "Supreme Court has repeatedly cautioned against a broad reading of the patent venue statute").

In a patent infringement case, venue is proper only where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 261–62 (2017); *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, 2020 WL 2079422, at *8 (D. Mass. Apr. 30, 2020). Under the first prong of Section 1400(b), a corporation "resides" only in its state of incorporation. *TC Heartland*, 581 U.S. at 270. For purposes of the second prong of Section 1400(b), the "regular and established place of business" requirement encompasses three elements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Cray*, 871 F.3d at 1360; *Metrom Rail, LLC v. Mass. Bay Transp. Auth.*, 2025 WL 3513894, at *4 (D. Mass. Dec. 8, 2025).

"As a matter of Federal Circuit law [], upon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue." *ZTE*, 890 F.3d at 1013; *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019) ("[T]he plaintiff has the burden of establishing proper venue under 28 U.S.C. § 1400(b).").

In deciding a Rule 12(b)(3) motion, the Court is not limited to the four corners of the complaint and may consider evidence submitted by the parties. *See Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086–87 (1st Cir. 1979) (considering affidavits and contracts as part of analysis whether venue was proper under 28 U.S.C. § 1400(b)); 5B Wright & Miller, Fed. Prac. & Proc. § 1352 (4th ed.) ("A district court may examine facts outside the complaint to determine whether its venue is proper.").

Where venue is improper, the court should dismiss the case, or if it is in the interests of justice, transfer it to a district or division in which it could have been brought. 28 U.S.C. § 1406(a).

## IV. ARGUMENT

### A. Venue Is Not Proper in This District Under Section 1400(b)

Plaintiffs cannot meet their burden to demonstrate that venue is proper in this District. *See ZTE*, 890 F.3d at 1013. Intuitive neither "resides" nor has a "regular and established place of business" in this District, making venue improper here. 28 U.S.C. § 1400(b); *see also Cray*, 871 F.3d at 1360; *TC Heartland*, 581 U.S. at 261–62.

#### 1. Plaintiffs Cannot Establish Proper Venue Under The "Resides" Prong

Venue is not proper under the first prong of § 1400(b) because Intuitive does not reside in this District. The Supreme Court in *TC Heartland* held that "a domestic corporation 'resides' only in its State of incorporation for purposes of [§ 1400(b)]." 581 U.S. at 262. Intuitive is a Delaware corporation. Shaw Decl. ¶ 3. Indeed, Plaintiffs concede that Intuitive does not reside here. *See* Dkt. No. 1 ¶ 10. Thus, venue cannot be established under the first prong of *TC Heartland*. 581 U.S. at 262; *Bio-Rad Lab'ys*, 2020 WL 2079422, at *9 (defendant did not reside in this District where it "has its principal place of business in California and is incorporated in Delaware").

#### 2. Plaintiffs Cannot Establish Proper Venue Under The "Regular and Established Place of Business" Prong

Venue is also not proper in this District under the second prong of § 1400(b) because Intuitive does not have a regular and established place of business in Massachusetts. For a defendant to have a "regular and established place of business," it must meet all three parts of the Federal Circuit's test: (1) it must have a physical place of business in the district; (2) that physical place of business must be regular and established; and (3) that place of business must be the defendant's. *Cray*, 871 F.3d at 1360. If even one part is not met, then there is no venue under the

second prong of the patent venue statute. *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1122 (Fed. Cir. 2021).

Plaintiffs cannot meet their burden to establish the required elements. Intuitive does not own or rent any offices in the District, or otherwise have any physical locations it holds out as its own in Massachusetts. Shaw Decl. ¶¶ 10–14. While a small number—and very small percentage—of Intuitive's employees reside in Massachusetts, Intuitive does not ratify its employees' homes as its place of business, and those remote employees do not store Intuitive sales inventory or capital equipment in their homes. *Id.* ¶¶ 15–19. Nor does Intuitive condition any of its employees' employment on residing in Massachusetts, and employees who service Massachusetts territories can and do live in other states. *Id.* ¶ 16. Thus, under the binding Federal Circuit standard, Intuitive does not have a regular and established place of business in this District.

While Plaintiffs' Complaint includes a hodge-podge of allegations in an attempt to establish a regular and established place of business belonging to Intuitive, none suffice to establish venue under the second prong. First, Plaintiffs identify a location in Worcester that has been entirely unaffiliated with Intuitive for years prior to the filing of the Complaint. Second, Plaintiffs' allegations regarding remote Intuitive employees are insufficient as a matter of law because Intuitive does not ratify their homes as its places of business. Third, Plaintiffs allege that Intuitive's employees visit and support customer surgical centers in Massachusetts that have da Vinci Systems, but Intuitive does not own or control any of those locations and does not hold them out as its own. Finally, Plaintiffs' allegations about manufacturing facilities in Chicopee and Newburyport point to a third party's facilities that cannot be attributed to Intuitive. Each of these allegations is separately addressed below, and each is insufficient to meet Plaintiffs' burden to establish proper venue.

**a. Intuitive's Former Worcester Location Closed Years Ago, and It Does Not Have Any Other Office or Physical Place in the District**

Intuitive does not have a physical place of business in the District. *See Cray*, 871 F.3d at 1362 ("While the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,' there must still be a physical, geographical location in the district from which the business of the defendant is carried out.") (citation omitted). Intuitive does not own or lease any office or other physical space in Massachusetts, and did not at the time the Complaint was filed. Shaw Decl. ¶ 10. Critically, Intuitive does not "list[] . . . [any] place of business [in Massachusetts] on a website, or in a telephone or other directory; or place[] its name on a sign associated with or on [any] building . . . ." *Cray*, 871 F.3d at 1363–64. Confirming this, Intuitive's public webpages list no locations in Massachusetts. Ex. 5 (Intuitive Webpage – Office Locations); Ex. 6 (Intuitive Webpage – Around the World); *see also* Shaw Decl. ¶ 11. Instead, Intuitive's webpages identify Intuitive's headquarters in Sunnyvale, CA, its regional offices in Peachtree Corners, GA, and a handful of other U.S. office locations, none of which are in this District. Ex. 5 (Intuitive Webpage – Office Locations); Ex. 6 (Intuitive Webpage – Around the World). While Plaintiffs make the bare allegation that Intuitive has some employees who use "offices rented or leased by Intuitive," Dkt. No. 1 ¶ 25, there are no facts to support that and, as explained, there are no such offices that Intuitive rents or owns.[3] *See* Shaw Decl. ¶¶ 10–14. That allegation is thus insufficient to support venue. *Westech Aerosol*, 927 F.3d at 1382 ("Simply stating that [defendant] has a regular and

---

[3] The Complaint also alleges that Intuitive is registered to do business and has a registered agent in Massachusetts, Dkt. No. 1 ¶¶ 10–11, but those facts are of no import to the patent venue analysis. *See Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 931 (E.D. Va. 2017) (rejecting arguments based on defendant's registration to conduct business and appointment of a registered agent to accept service of process and noting those allegations do not "ha[ve] any bearing on whether [a defendant] maintains a physical place within the District").

established place of business within the judicial district, without more, amounts to a mere legal conclusion that the court is not bound to accept as true.”).

Plaintiffs’ allegation that Intuitive has a physical location in this District at 722 Plantation Street, Worcester, Massachusetts 01605 is demonstrably incorrect. Dkt. No. 1 ¶ 12.[4] Intuitive ended any association with that location on June 23, 2023—more than two and a half years before the filing of the Complaint. Shaw Decl. ¶ 13; Ex 7 at 1 § 2 (Lease Termination Agreement). As explained above, Intuitive does not have any offices or other physical locations in Massachusetts. *See* Shaw Decl. ¶¶ 10–12; *see also* Ex. 5 (Intuitive Webpage – Office Locations); Ex. 6 (Intuitive Webpage – Around the World). Indeed, the location listed in Plaintiffs’ Complaint currently has signage for another company that is not owned by or otherwise affiliated with Intuitive, and that other company’s website confirms that it occupies the facility. Shaw Decl. ¶¶ 13–14; *see also* Ex. 13 (Alpha Preclinical Webpage – Contact) (third party Alpha Preclinical’s website listing 722 Plantation Street as its address and showing an image of the location).

Where, as here, Plaintiffs’ allegations are expressly “contradicted by the defendant’s affidavit . . . a district court may examine facts outside the complaint to determine whether its venue is proper.” *Metrom*, 2025 WL 3513894, at *3 (internal quotation marks omitted) (quoting *Turnley v. Banc of Am. Inv. Servs., Inc.*, 576 F. Supp. 2d 204, 211 (D. Mass. 2008)). Because the facts show that the lease at 722 Plantation Street terminated years before the Complaint was filed, and because Intuitive does not rent or own any other physical locations in this District, Plaintiffs cannot meet their burden to establish venue based on Intuitive having a physical place in the District. *See Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 932–33 (E.D. Tex. 2017)

---

[4] Plaintiffs inconsistently refer to the address of the alleged Worcester facility, sometimes referring to it as being at 772 Plantation Street (instead of 722). Dkt. No. 1 ¶ 23. The former does not appear to be an address for an actual facility in Worcester, Massachusetts.

(holding former lease was insufficient where defendant maintained no current operations at location); *see also Int'l Techs. & Sys. Corp. v. Samsung Elecs. Co.*, 2018 WL 4963129, at *6 n.2 (C.D. Cal. June 22, 2018) (analyzing "the facts and circumstances that existed at the time the Complaint was filed" and finding venue was improper).

**b. Intuitive's Remote Employees' Homes Are Not Places of Intuitive**

Plaintiffs' next venue allegation—that the home offices of remote Intuitive employees who sell, support, and maintain Intuitive products are *Intuitive's* regular and established place(s) of business—fails as a matter of law. Dkt. No. 1 ¶ 25; *Cray*, 871 F. 3d at 1363 ("As the statute indicates, it must be a place *of the defendant*, not solely a place of the defendant's employee.") (emphasis in original). Under *Cray*, employees' homes can only constitute a place of the employer under extraordinarily narrow circumstances:

> "The defendant," and not merely the defendant's employee, "must establish or ratify the place of business. Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place, whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place," as well as "marketing or advertisements to the extent they indicate that the defendant itself holds out a place for its business."

*Metrom*, 2025 WL 3513894, at *4 (quoting *Cray*, 871 F.3d at 1363) (cleaned up). Finally, "[a] further consideration for this requirement might be the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." *Cray*, 871 F.3d at 1364 (emphasis in original) (internal footnote omitted). The homes of Intuitive's remote employees meet none of these factors, and when compared with Intuitive's actual places of business "reveal that [they are] not really . . . place[s] of business at all." *Id.* These considerations confirm that Intuitive does not establish or ratify its employees' homes as its places of business.

First, Intuitive does not own or lease any of its employees' homes, or otherwise "exercise[] other attributes of possession or control over" those places. *Metrom*, 2025 WL 3513894, at *4 (quoting *Cray*, 871 F.3d at 1363); Shaw Decl. ¶¶ 15–19. For Intuitive's employees who choose to live in Massachusetts, they have full ownership of and control over where they live and Intuitive does not have any rights, financial or otherwise, in their homes. Shaw Decl. ¶ 15. Indeed, Plaintiffs do not even allege any form of control by Intuitive over its employees' homes. On this factor, Plaintiffs simply allege that there are some Intuitive employees who live in Massachusetts, relying on alleged LinkedIn pages of four Intuitive employees. Dkt. No. 1 ¶ 25. In *Celgene v. Mylan Pharmaceuticals*, the Federal Circuit found allegations more substantial than these insufficient to establish ratification. 17 F.4th at 1123. There, to support venue in New Jersey, Plaintiff "point[ed] to a roster of employees who live in the state, a handful of business cards with employee names and New Jersey home addresses, and two LinkedIn profiles mentioning New Jersey." *Id.* The Federal Circuit described these facts as "thin," *id.* at 1119, and held that:

> Without more, this is all too speculative to show ratification of those addresses as [defendants'] places of business (much less that the employees themselves regularly conducted business specifically at their homes). Indeed, it is not enough "that there exists within the district a physical location where an employee of the defendant carries on certain work for his employer."

*Id.* at 1123 (quoting *Cray*, 871 F. 3d at 1366). Here, Plaintiffs' allegations that some Intuitive employees live in Massachusetts are even more deficient than those in *Celgene* and thus cannot carry their burden of establishing venue in this District. *See also Personal Audio*, 280 F. Supp. 3d at 936 (explaining that plaintiff failed to "show that the homes of the [defendant's] 'employees' are in any way under the control of [defendant] or were ever held out as [defendant]'s places of business" and "[t]he fact that [defendant] may allow its employees to work from the Eastern District of Texas does not establish proper venue in this district"); *Correct Transmission LLC v.*

*ADTRAN, Inc.*, 2021 WL 1967985, at *4 (W.D. Tex. May 17, 2021) (explaining that a defendant must "establish or ratify" an employee's home office for it to count as a regular place of business).

Second, Intuitive does not require its employees to live in any state, including Massachusetts, as a condition of employment. Shaw Decl. ¶¶ 15–16. Plaintiffs' allegation that Intuitive "require[s] clinical territory associates to live in or relocate to Massachusetts" is unsupported by the link Plaintiffs cite. Dkt. No. 1 ¶ 29 (citing SimplyHired Webpage, which is attached to this Motion as Ex. 16). That webpage merely says: "Candidates must live within or be willing to relocate to the Boston, MA Area to perform the duties of this role." Ex. 16 at 3. However, clinical territory associates servicing the "Boston, MA Area" are not required to live in Boston or even Massachusetts so long as they are within commuting distance and able to service the Boston area hospitals and surgical centers. Shaw Decl. ¶ 16; *see IngenioShare, LLC v. Epic Games, Inc.*, 2022 WL 827808, at *4 (W.D. Tex. Mar. 18, 2022) (holding that job postings advertising positions in Austin were insufficient to support venue where defendant provided evidence that employees do not have to live in Austin, or even in Texas). Thus, to name a few examples, employees could—and in fact do—live in southern New Hampshire (*e.g.*, Manchester and Nashua are less than an hour drive to Boston). *See* Shaw Decl. ¶ 16; Exs. 17 & 18 (Driving time from New Hampshire cities to Boston). Similarly, employees could live in Northern Rhode Island (*e.g.*, Providence is also less than an hour drive to Boston). *See* Shaw Decl. ¶ 16; Ex. 19 (Driving time from Providence to Boston). Like in *Cray* and *Celgene*, Intuitive "allows" its employees to work from Massachusetts, but does not require any of its employees to live there. *Cray*, 871 F.3d at 1357, 1364–65; *Celgene*, 17 F. 4th at 1123–24; *see Westech Aerosol Corp. v. 3M Co.*, 2017 WL 3387363, at *3 (W.D. Wash. Aug. 7, 2017) ("[S]tanding alone, having a sales presence in a district does not confer jurisdiction over a defendant under 28 U.S.C. § 1400(b).").

Finally, Intuitive does not require employees to store inventory or da Vinci capital equipment in its employees' homes. Shaw Decl. ¶ 17. That makes sense, particularly for sales inventory, since Intuitive sells and services its products for use at hospitals and surgical centers, and its da Vinci Surgical Systems, for example, are complex, heavy machines. Instead, for demonstrations to customers or potential customers, Intuitive relies on an 18-wheel, 80,000-pound truck that travels across states. *Id.* While remote Intuitive employees receive a laptop and may request a desk and a monitor, they do not have sales inventory or capital equipment in their homes. *Id.* ¶ 18. The facts here are therefore analogous to those in *Cray*, where the Federal Circuit found that the plaintiff failed to meet this prong because "[n]o evidence indicates that [the defendant] . . . stored inventory or conducted demonstrations" at its employee's home. 871 F.3d at 1365; *see also Regents of Univ. of Minn. v. Gilead Scis., Inc.*, 299 F. Supp. 3d 1034, 1043–45 (D. Minn. 2017) (venue was improper even though some of the defendant's employees lived in Minnesota and some of those employees "maintain[ed] limited quantities of sample Gilead medications in storage lockers" and "small quantities of promotional literature in their home offices"); *Clark v. DocuSign, Inc.*, 2022 WL 16985185, at *2 (D.D.C. Nov. 15, 2022) (venue improper where employees residing in district did not "store any materials to sell and distribute" or "perform any 'live demonstrations, evaluations, trainings, and/or presentations' from their homes").

Intuitive is a perfect example of why courts do not ascribe venue based on the homes of a few remote workers. Intuitive's Sunnyvale headquarters is where the bulk of Intuitive's engineering and design work takes place. Shaw Decl. ¶¶ 6–8. Intuitive's other offices around the world are also large, physical office buildings and facilities where thousands of employees work. *Id.* ¶ 9. In contrast, only about 65 remote Intuitive employees live or work in Massachusetts, which is less than 0.4 percent of its total employees, and its business is not based on employees working

from their homes. *Id.* ¶ 15; *see* Ex. 14 at 25 (Intuitive 2025 Annual Report) (as of 2025, Intuitive had approximately 17,000 employees). And while some employees may have home offices, these kinds of allegations are "far less persuasive in the modern era" as a basis for venue and cannot supply venue here. *See C.R. Bard, Inc. v. Smiths Med. ASD, Inc.*, 2020 WL 6710425, at *13 (D. Utah Nov. 16, 2020) (venue improper where sales employees had home offices); *Rosco, Inc. v. Safety Vision LLC*, 2020 WL 5603794, at *3 (S.D.N.Y. Sept. 18, 2020) (finding employee home offices did not constitute physical place of business because the only employees in the district were "remote sales associates or installation technicians," as compared to the more than 90% of defendant's employees based at its principal place of business in Houston, Texas).

**c. Hospitals and Surgical Centers Are Not Places of Intuitive**

Plaintiffs also allege venue is proper because surgeons use Intuitive products in hospitals and surgical centers in this District and Intuitive employees can support them, but that, too, is insufficient to support venue. Dkt. No. 1 ¶¶ 24–25. Plaintiffs concede that the hospitals and surgical centers are "Intuitive's customers'"—not Intuitive's—in their Complaint. *Id.*; *see also* Shaw Decl. ¶ 21. Indeed, Intuitive does not own any hospital space, nor does it employ the staff of any hospital or surgical center. Shaw Decl. ¶¶ 20–23. Plaintiffs neither suggest that Intuitive has any control over the hospitals or surgical centers nor that they have any room or space that is "set aside and identified as the place for [Intuitive] employees" when they "visit," *see* Dkt. No. 1 ¶ 25—which, notably, would still be insufficient. *See Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*, 2022 WL 7376137, at *3 (E.D. Tex. Aug. 22, 2022) (holding that visits to dealership by Ford employees were too sporadic to establish regular physical presence of employee), *rep. & rec. adopted*, 2022 WL 4280490 (E.D. Tex. Sept. 15, 2022); Dkt. No. 1 ¶ 26 (referring to Intuitive's employees "visit[ing]" customers' surgical centers). Plaintiffs' allegations here are strikingly similar to those in *4WEB, Inc. v. NuVasive, Inc.*, where the plaintiff alleged that venue was proper

because defendant had remote employees and those employees "have an on-site presence in surgery centers and hospitals to train physicians and staff how to use the Accused Products." 2024 WL 1932416, at *2 (E.D. Tex. May 2, 2024) (citation omitted). Venue was improper despite these allegations. The court found the hospitals and surgery centers were not places of the defendant; it explained that plaintiffs failed to point to any "'place' . . . in the hospitals, surgery centers, or elsewhere in this District over which [defendant] exercises possession and control" and rejected plaintiff's argument that the presence of the accused products in the third-party surgery centers and hospitals was sufficient for venue. *Id.* at *4–5. Plaintiffs' allegations here are not meaningfully different than those in *4WEB*, and thus do not support venue.

Absurdly, Plaintiffs take the position that a physician locator feature on Intuitive's website (that identifies third-party physicians by location) establishes venue without even attempting to allege that the website converts these third parties' locations into Intuitive places of business. Dkt. No. 1 ¶ 24. That physicians at hospitals and surgical centers in the District have performed surgery using Intuitive's systems does not make venue proper. Like in *Ocugiene, Inc. v. ThermaMEDx, LLC*, where the defendant had a "Doctor Locator" on its website that allowed patients to find doctors but did not exercise any control over those doctors or what they communicated to patients, Plaintiffs' allegations are insufficient to establish that the physicians or their employing hospitals or surgical centers are a place of Intuitive's where Intuitive's business is carried out. 2022 WL 18284980, at *2–3 (C.D. Cal. Dec. 8, 2022); *see also 4WEB*, 2024 WL 1932416, at *3 (finding insufficient plaintiff's allegation that defendant's website had a "'surgeon locator'" tool that identifies many surgeons and facilities located within the district).

**d. Third-Party UFP Facilities Are Not Places of Intuitive**

The remainder of Plaintiffs' venue allegations rest on the manufacturing facilities of a third party—UFP—and are insufficient to establish venue because they are wholly unsupported and

conclusory. Dkt. No. 1 ¶¶ 30–34. Aside from citing one SEC filing to support that UFP—not Intuitive—has a facility in Newburyport, Massachusetts, Dkt. No. 1 ¶ 32, Plaintiffs' allegations rest on mere assertions. Plaintiffs cite no alleged facts to support their allegations that UFP, a third-party manufacturer, is an agent of Intuitive or that Intuitive's employees conduct Intuitive's business at UFP facilities. *See* Dkt. No. 1 ¶¶ 30–34. The law is clear that conclusory allegations, like Plaintiffs', are insufficient to meet their burden on a venue motion. *See, e.g.*, *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (citation omitted); *Westech Aerosol*, 927 F.3d at 1382 (explaining that "the court is not bound to accept as true" what "amounts to a mere legal conclusion"); *see also Janssen Prods., L.P. v. EVER Valinject GmbH*, 2025 WL 639380, at *8 (N.D. Ill. Feb. 27, 2025) (allegation that defendant MCE "operates in concert with and under the direction of" other companies was "conclusory in nature and lacks facts to support that those entities controlled MCE's work" and therefore insufficient to establish agency relationship for purposes of venue). The Court can therefore reject Plaintiffs' conclusory allegations for that reason alone.

Equally fundamentally, Plaintiffs' bare allegations fail as a matter of law and fact. To start, Intuitive does not own or control any of UFP's locations, including the Newburyport and Chicopee locations cited in the Complaint. *See* Dkt. No. 1 ¶¶ 30–34; Ex. 9 (UFP locations). Intuitive does not rent, lease, own, or otherwise have any interest in either facility and also had no role in selecting the location of either facility. Shaw Decl. ¶ 16. Further, Intuitive does not hold any UFP facility out as its own and does not require any signage, branding, or other "Intuitive" identification to be displayed at any UFP facility. *Id.* As evidence of this, Intuitive's website does not list any UFP facility as an Intuitive location. *Id.* In fact, a search for "UFP" on Intuitive's website does not

turn up any results. Ex. 15 (Intuitive Webpage – Search Results). Relatedly, no Intuitive employees are based out of the UFP facilities. Shaw Decl. ¶ 27. While Plaintiffs allege that Intuitive's "employees and contractors regularly visit" UFP's manufacturing facility and "perform their job responsibilities at this facility," Dkt. No. 1 ¶¶ 31, 33, Plaintiffs cite no facts supporting that allegation and the contention is therefore entitled to no weight. And, even if that allegation were supported and true, it still would not convert UFP's facilities into Intuitive's facilities. *See Westport Fuel*, 2022 WL 7376137, at *3.

Plaintiffs' further allegation that UFP is somehow Intuitive's agent is nonsensical. UFP is a publicly traded company. Ex. 11 at 8 (UFP 2025 Annual Report). In relation to Intuitive, UFP is an independent third-party manufacturer, and Intuitive is just one of its multiple customers. *Id.* at 9; Ex. 12 at 8 (UFP March 2026 Investor Presentation). Intuitive does not control UFP.[5] Shaw Decl. ¶¶ 24–25. Plaintiffs' conclusory allegation that Intuitive "directly engages in or enjoys the right to direct and control" UFP's manufacturing activities and "exercises a high degree of interim control" over UFP's day-to-day operations is unsupported and belied by reality. Dkt. No. 1 ¶ 34.

Given these facts, even if Plaintiffs had tried, they could not come close to meeting the demanding burden to show that UFP is an agent of Intuitive. To meet the high burden for proving an agency relationship, Plaintiffs would have to show that Intuitive exercises "interim" control over UFP. *In re Google LLC*, 949 F.3d 1338, 1345–46 (Fed. Cir. 2020); *Volkswagen Grp.*, 28 F.4th at 1209 ("*Google* recognizes that an agency relationship requires the principal have the right

[5] The fact that UFP is a publicly traded company undermines any suggestion by Plaintiffs that Intuitive, another publicly traded company, exercises any control over it. Ex. 11 at 8 (UFP 2025 Annual Report); Ex. 14 at 7 (Intuitive 2025 Annual Report). Because UFP and Intuitive are separate and independent companies, this is not a close case where there is a question of the sufficiency of corporate separateness between related companies. *See Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th at 1283, 1285, 1289 (Fed. Cir. 2021).

throughout the duration of the relationship to control the agent's acts.") (cleaned up); *see also Signify Holding B.V. v. Keystone Techs., LLC*, 2024 WL 6912730, at *2–4 (N.D. Ga. Dec. 19, 2024) (no venue where defendant had agreement with a third party to warehouse and fulfill products but no evidence to "suggest that [defendant] retained the right to direct or control [the third party's] actions"). Besides Plaintiffs' conclusory and unsupported assertion that Intuitive "directly engages in or enjoys the right to direct and control its agent's actions" (notably, without even naming UFP), Dkt. No. 1 ¶ 34, there are no plausible facts supporting that UFP is Intuitive's agent, because it is not.

* * *

All of Plaintiffs' venue allegations fail. Under the first prong of § 1400(b), Intuitive is incorporated in Delaware and thus does not reside in this District. Under the second prong, Intuitive does not have a "regular and established place of business" in this District. There is no Intuitive facility in Worcester; Intuitive's remote employees' homes are not regular and established places of business *of* Intuitive; and third-party UFP's facilities are not Intuitive's and cannot be attributed to Intuitive. Accordingly, Plaintiffs have not carried their burden to establish that venue is proper in this District under either prong of § 1400(b).

### B. Because Venue Is Improper Under Section 1400(b), The Court Should Dismiss, Or At Least Transfer to The Northern District Of California

Given that venue is improper in this District, the case should be dismissed, or at least transferred under 28 U.S.C. § 1406(a). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). The decision whether to dismiss or transfer is left to the court's discretion and courts "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

The Court should dismiss the case, since there are no compelling interests of justice warranting transfer here. Intuitive is not aware of any impending statute of limitations, or anything impeding Plaintiffs from refiling in another district. Indeed, "it is obviously not 'in the interest of justice' to allow this section to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district," *Mulcahy v. Guertler*, 416 F. Supp. 1083, 1086 (D. Mass. 1976) (citation omitted), especially where, as here, Plaintiffs' primary basis for establishing venue is an easily disproven assertion regarding an office presence. As explained above, "the plaintiff[s] in this case either knew or should have known, in the exercise of reasonable diligence" that venue is wholly improper in this District. *Id.* The Court should dismiss this case. *See Westech*, 927 F.3d at 1382 (affirming dismissal for improper venue); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 956 (1st Cir. 1984) (same); *Cabot Corp. v. WGM Safety Corp.*, 562 F. Supp. 891, 892 (D. Mass. 1983) (granting motion to dismiss for improper venue under § 1400(b)).

If the Court believes it is in the interests of justice to transfer this case instead of dismissing, Intuitive respectfully requests that the Court transfer this case to the Northern District of California. "In deciding where to transfer a case under § 1406(a), the question is which forum would be better positioned to further the interests of justice." *Stars for Art Prod. FZ, LLC v. Dandana, LLC*, 806 F. Supp. 2d 437, 449 n.108 (D. Mass. 2011) (cleaned up). Here, that district is indisputably the Northern District of California. As Plaintiffs acknowledge, Intuitive is headquartered in Sunnyvale, within that District. Dkt. No. 1 ¶ 10. The Access Port Kits were developed at Intuitive's California headquarters, and the Intuitive employees who have relevant knowledge related to the Access Port Kits and their development are, unsurprisingly, predominantly located in that District. Shaw Decl. ¶¶ 2, 6–8. The same is true for the relevant documents and evidence in this case. *Id.* ¶ 8. And, while Plaintiffs may not have a connection to the Northern District of

California, they also do not have a connection to this District, either. *See* Dkt. No. 1 (containing no allegations of Plaintiffs' connection to Massachusetts). Because Plaintiffs' claims could have been brought there and transfer is appropriate under § 1406(a), the Court should transfer to the Northern District of California if it is inclined to transfer instead of dismiss.

Dated: June 1, 2026

Respectfully submitted,

*/s/ Brian Rosenthal*

Brian A. Rosenthal (Pro Hac Vice)
Charlotte Jacobsen (Pro Hac Vice)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
BRosenthal@gibsondunn.com
CJacobsen@gibsondunn.com

Nathaniel R. Scharn (Pro Hac Vice)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone: 949.451.3994
nscharn@gibsondunn.com

Hannah L. Bedard (Pro Hac Vice)
Wendy W. Cai (Pro Hac Vice)
Anthony David Brzozowski, II (Pro Hac Vice)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
hbedard@gibsondunn.com
wcai@gibsondunn.com
dbrzozowski@gibsondunn.com

Christine K. Bush, Esq. (BBO # 635381)
Mackenzie C. McBurney (BBO #708856)
Hinckley Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
cbush@hinckleyallen.com
mmcburney@hinckleyallen.com

*Attorneys for Defendant Intuitive Surgical, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2026, a true copy of the foregoing document filed through the CM/ECF system will be sent electronically to all counsel of record identified on the Court's Electronic filing system.

/s/ Christie K. Bush
Christine K. Bush, Esq.